My name is John Hoffman. I represent the city of Martinez, the appellant in this case. The case presents essentially a single issue under California law. And the issue is whether this case, the city's civil suit against Texaco, which arose out of an oil spill in 1997 from a Texaco pipeline in an area called Makoko Marsh, was barred entirely by the race judicata effect of a civil compromise that was reached between Texaco and the State Department of Fish and Game in a criminal proceeding that the Fish and Game Department had brought as a result of the same oil spill. The city's position is that its action here is not barred because Texaco, the moving party, failed to establish two of the three essential requirements for race judicata to apply under California law. The first requirement that it failed to establish is that the issues in the two proceedings must be identical. What does your client seek that was not covered, obtained, or could have been covered or obtained by the department's action? Primarily, Your Honor, relief for Texaco's invasion of the city's conservation easement, a property interest that the city holds over this portion of the marshland as a result of a grant by the landowner. That's essentially a private property interest, although it happens to be held in this case by the city of Martinez, a governmental entity. It's protected by the Constitution. It could not be taken without payment of just compensation. It's protected by the California Civil Code and by the government code, both of which give city the right to enforce it against someone who invades it, as Texaco did in this case. Tell me what, tell the panel, what the city hopes to accomplish that was not accomplished by the department. Well, Your Honor, the city, under its conservation easement, the city has the right to the maintenance of the marshland in its natural state as it existed with the scenic resources, the wildlife resources, the ecological values as existed at the time the easement was granted. They no longer exist. As a result of the oil spill, marsh soils, 12 inches of the top of the marsh were removed because they were so contaminated they could not be restored in place. So-called clean fill was brought in. What is there now is not what was there at the time of the oil spill. In addition to that, the city does also contend that the oil spill was not fully remediated at the time Texaco performed certain actions. And I think it was the year 1998 or perhaps a bit later. So is your claim that the department didn't do a good enough job in policing Texaco? Our claim, Your Honor, is that the department did not make any attempt to, indeed did not have any authority to vindicate the city's rights under its conservation easement. As I've stated, that is a property interest that the department is not charged to protect that the criminal court, in fact, had no jurisdiction to adjudicate in any way to decide whether or not that easement had been invaded, whether damages were due, and so forth. That simply was not an issue. Indeed, it could not have been an issue in the earlier proceeding, which is one of the reasons why under California law and is recognized also by Ninth Circuit cases that we cited. The Trujillo case in our brief, and then in the letter we wrote last week, we cited the very recent decision by Judge Kaczynski in Freeman versus the San Diego Board of Realtors case, both of which state that under California law, as do the California cases, when the first court did not have jurisdiction over the claim asserted in the second case or could not have granted the relief that was sought in the second case, both of which are true here, then res judicata does not apply and the second case can be pursued. You seek damages? Correct. The city seeks damages? It does. And injunctive relief? It does. And in what form does it seek injunctive relief? What is it asking? In this case, well, the pleadings ask for further restoration, for injunctive relief in the nature of further restoration to the extent it's feasible and possible to attain. And those would be factual issues that would have to be examined in the trial court, no doubt with the aid of experts as well. As far as damages are concerned, as I stated earlier, the city's easement simply does not have the value that it had when it was granted and before the Texaco pipeline leaked and spilled oil into the marsh and caused the removal of the marsh soils, the various effects on the fish and wildlife and other resources of the marsh that are detailed in the administrative record. And as to how those damages are measured, the statute, the civil code, the California Civil Code provides that the loss of those resource values, recreational values, scenic values, ecological values, can be compensated in an action brought by the easement holder, the city in this case, against the party who invaded, violated the easement, Texaco in this case. And as I stated, that was not an issue over which the criminal court had any jurisdiction. It was not an issue that the Fish and Game Department was authorized to pursue. We cited in our brief principally the Seadrift Association decision, which is one of the main race judicata cases under California law. And there at numerous places the court of appeal distinguished between the public rights that the Fish and Game Department is charged with protecting by prosecuting the violation of the public offense, as in this case, and private rights such as those held by the city under its conservation easement, which were not a subject of the earlier proceeding. So that is the access case, sir? It was Seadrift, the one about access. It was a case about access. It was about easement rights, and the court held that all claims of public, that is implied dedication, implied easement granted to the public, all such claims were foreclosed. But it was at pains, and I emphasize that because it said it about five times in its opinion, that the earlier settlement between the various government agencies, the California Coastal Commission, in fact, agencies of the federal government, and the property owners did not preclude the prosecution of any claims based on private easements that might be held by the plaintiffs in the second case, in the Seadrift case. But the court then said that the plaintiffs had not pleaded or proved or attempted to show that they held such private rights. And, in fact, the Ninth Circuit decision in the Alaska sport fishing case, which is cited I think in Texaco's brief, contains language to exactly the same effect. The district court judge in that case had given the sport fishing plaintiffs an opportunity to plead private claims based on damage or invasion of their private property rights, rights they held distinctively and independently of the rights held by all members of the public to protection of the environment, and they were unable to do so in that case. And the court strongly implied, if not held, that the result would have been different if they had been able to do so. Excuse me. What private right does the city have here, separate and apart from what the public as a whole has? The rights derived from the conservation easement, Your Honor, which, though held by the city. The conservation easement is not personal. It is a unique kind of easement defined under the statute, among other things, as not being personal. It's a property right. So the city has rights with respect to that property, as does the landowner, for example, which are unique to the city. What are those? That's what I don't understand. I mean, I look at this, and it seems to me the city's rights to require the owner, the fee owner of the property to maintain open space, and the easement mostly operates as a restriction on the fee owner's use of the property, is of a kind that is very much a public trust kind of right. And what the city's unique right is, separate from the public right, I'm not sure I understand. Well, they overlap in the sense that the city's right is to protect the ecological, natural, scenic values of that marshland. But the city has a right, as an individual, if you will, a distinct property right, the same right, as we pointed out in our brief, that Audubon Society or Nature Conservancy would have if it had been the grantee of this easement. And I would suggest to the court that in no way would the court, this court, the California courts more pertinently, would they hold that such a holder of a conservation easement would have been barred from pursuing this action as a result of the settlement that the Department of Fish and Game made with Texaco. And the city's position is exactly the same as any of those other holders of a conservation easement would be. It is entitled to pursue its claims for damages, monetary relief, and to the extent it's feasible to grant injunctive relief against what occurred here. Did you want to save some time for argument, for rebuttal? I would like to. I would like only to say briefly that in addition- Interfere with the argument in any way. Are you ready to stop your story? I do. I will stop. I just wanted to say a second requirement that we haven't talked about here, closely related to the first in this case, is that the city would be barred only if it was in privity with, that is, if the Fish and Game Department acted as the city's legal representative in the first case, and it did not for the various reasons that I've stated. It didn't have authority to do so. It didn't purport to do so. The court had no such jurisdiction over the city's claims in the criminal proceeding, and privity is a due process requirement. The city holds a property right here. It can't be deprived of it without due process. To do so, to hold that it was in privity with Fish and Game would effect such a deprivation. Thank you very much. Do you have some time left for rebuttal? Thank you. Mr. Reese? Thank you, Your Honor. John Reese for the Appallee. It strikes me that the dispute in the case is relatively narrow. We agree on the general law that applies. We agree on the general standards that are the elements of that law, and what we're coming down to is what exactly is the nature of the city's right under its conservation easement, under its open space and conservation easement, and how, if at all, does that right differ from the rights that were vindicated in the litigation brought by the California regulatory authorities? I think, listening to counsel, that if you boil it down, if you boil down what this easement is all about, you come out with the conclusion that the city's interests and its rights under that easement are essentially identical to those that were vindicated in the prior litigation, and that's why the district court properly held that res judicata should apply here. How do you respond to counsel's argument that the criminal court was without jurisdiction to consider some of the claims that are asserted in this litigation? Let's take, for example, a claim, I think it's 17, common law trespass. How could a criminal court adjudicate the city's claim for civil trespass? Well, preliminarily, the city does not have a trespass claim under its easement. Well, it's alleged it, so, I mean, that's in its complaint. But we have the easement in front of us, and we can see what that means. I'm just talking about the theories that they're asserting and how they could have. You may, if this goes back, you may ultimately win on the merits, I grant you that. But I'm just thinking theoretically now on what jurisdiction the criminal court would have over the specific claims that are asserted in the civil action. I think the answer to that, Your Honor, is that although this case, the earlier case, was initiated as a criminal misdemeanor case, the way it was resolved was in the form of a civil compromise because the party who was the victim of the alleged crime had a civil remedy. And so although it was started as a criminal case, it was ended as a civil case. And I don't mean to interrupt you, and I read that in your argument in your briefs, but struck me, though, is if that is so, then your defense would be release rather than res judicata, correct? Well, in other words, the release wasn't broad enough to encompass the city, and it was eventually resolved as a civil compromise, not as essentially a final judgment in a criminal case. So I come back to my original question. If the theory of res judicata claims that could have been asserted in the first instance in the criminal case, even though it was resolved civilly, how do the claims asserted in this case, how could they have been asserted in the criminal case? Well, if the court is interested in the trespass case, for example. Just through that as an example. I mean, there are 17 or 18 counts. I think that I would agree with the court on that, but I think that that is getting away from the real issue, which is the nature of the primary right that is involved here and whether that would encompass that kind of claim. Under the terms of the easement and the statute under which it was created, it would not. If you read this easement, you will see that its whole thrust is to restrict what the grantor, Rhone-Pollak, could do on this property. The thrust of it is to prevent Rhone-Pollak from building, from developing the property. It's not clear from the face of this easement that it gives the city any rights at all against third parties. Suppose the easement were for ingress and egress as opposed to conservation, and the same situation obtained there had been some environmental event. A state regulatory agency stepped in. The responsible party stepped up to the plate, as Mexico did here, and they agreed upon a remediation plan. But at the end of the day, there was still impact on the ingress-egress easement. Would that be different? I think that's a different case, Your Honor. That's a different right. That's a different easement. It's a different primary right. This easement, for example, gives no right of ingress on this property. It does give the holder the right, doesn't it, or the expectation, if you will, that the property, the land, will be maintained in its natural state. At least by the grantor. I think it's not clear that it gives the holder of the easement that right as against third parties. Well, what if a government exercised a right of eminent domain and decided to build on the property? Do you think that the conservation easement conveyed a sufficient property right that it would be compensable as a taking? I'm not sure of the answer to that, Your Honor. The easement contemplates that eminent domain is possible. All right. But if the answer to that question is yes, and I don't know the answer to the question, but if the answer to the question is yes, it could there are sufficient Fifth Amendment property interests that it would be compensable as a taking, and it seems to me that it does contemplate at least some protection against third parties. Well, I'm going to say. Third party development, if you will. I'm going to say that I don't believe it does have that kind of a compensable interest, and here's the reason that I say that. One of the arguments counsel made was that it is a private right that is separable from the public right. First of all, I don't think that that changes the fundamental nature of what the right is, and that was a right to be free from contamination or contamination of the march. It may include natural resource damages from that contamination, but it all comes back to a right to be free from contamination, so that the label of private or public doesn't change the underlying nature of the right itself. And as a matter of law, this easement is basically a public right. Under the government code, Section 51075 and 51081, as a matter of law, the acceptance of this easement deed constituted a dedication to the public of the open space easement. The easement itself says that every term and condition of the easement is intended for the public benefit. That would be at excerpt of record page 185. And so when you come down to it, that's exactly the same right that the Department of Fish and Game and the California regulatory authorities vindicated. They vindicated the public's right to the natural resources of this property. The city's right cannot be distinguished from that right that was previously vindicated. In terms of- It doesn't matter who owns the easement. Suppose it were the Nature Conservancy and not the city. Would the Nature Conservancy be in a position to say, look, were the ones allowed to make that decision? No, it's still the same primary right, Your Honor. If the primary right is the same and the parties are in privity, the race judicata doctrine should bar the second action. Right, but then you get down, I think, assuming Judge Clifton's hypothetical, then you get down to the privity question. Yes. And the Nature Conservancy, I gather you would say, would still be in privity with the government on this. Is that your argument? Because I gather it must be, right? It certainly is, Your Honor. So how do you get around? To reach that, you basically have to adopt a theory of virtual representation. How do you square that with Richards, the Supreme Court case on that? It seems to me that you have, in order for that to apply, you have to have some notice and acceptance. And here you have factually a different situation, it seems to me, and you can correct me if I'm wrong, where the city was actually on notice that it wouldn't apply and drew different assumptions from that. So how do you square the situation on privity with Richards and his progeny? Your Honor, there's no doubt the city was on notice of the action. There's no doubt about that, of the action. There's no doubt that if it felt that its interests were threatened, that it could have sought to participate and chose not to. It thought it had, I guess. It thought it had received assurance from the district attorney that it wasn't going to be affected. That may or may not be correct, but it's not as if it sat around and did absolutely nothing. Well, our answer to that, Your Honor, is that the law of race judicata can't turn on whether the city makes a mistake about whether the prior case is going to be binding on it. In fact, this issue, it seems to me, comes down to very much the same consideration as the primary rights issue itself, and that is what was being protected in the first case and how is that different from the interest that the city is trying to assert in this case. Under the California race judicata doctrine, the primary thing that the court should look at is whether the interests were close enough that the Department of Fish and Game was motivated and was protecting the same interest. And for the reasons that we've just been over, we submit that those interests are essentially identical. That was the interest to prevent contamination of the marsh, and that's exactly what the Department of Fish and Game did. Suppose it were a private landowner not dealing with just an easement but simply owning the simple property there on the marsh, and it argues that the value of its property has been diminished not because of physical injury to the property but because of contamination to the marsh, and hence the restriction on looking out over the water and checking out the birds and so forth. Would that private landowner be barred from prosecuting a claim? I mean, it would not seem to be covered by race judicata in the same way, would it? The claim in that case would still boil down to a claim for injury to the natural resources of the marsh that were not part of the landowner's property, if I've understood the hypothetical, and that would be the claim that was vindicated. I understand it's hard to divorce the hypothetical because a landowner would be concerned about the monetary value of the property and how it might be affected, but it is not required inherently to accept the Department of Fish and Game as its representative, is it, simply because they may have interests that are parallel? Well, it's not required, but when those interests are sufficiently allied and alike, then the doctrine of privity would hold that the landowner is barred by the Department's action, which was to seek relief for and release all claims for natural resource damages. Well, let's take your theory to an extreme because I think it does have some profound implications, but let's take the Alaskan oil spill. I guess under your theory, if you settled one suit, the first suit, to vindicate a public right for all the oil spills under your theory, that would be race judicata as to all other conceivable causes of action seeking to vindicate that right, right? Yes, to vindicate that right. We're talking about the public right as opposed to perhaps any private rights. Yes. So if a suit brought by any environmental group, Nature Conservancy, any governmental entity, the first one in who settles bars every other group from asserting a claim based on public harm, even though their theory is different. That's basically, as I distill your theory in this case. I think that Your Honor has it, and I think that is the doctrine of race judicata. That's what it's about. Doesn't that encourage a race to the settlement table? I mean, there may be a dozen organizations with a similar interest, and if you can strike a deal with one, you're able to eliminate the claims of the other 11? Well, in my experience, parties are not shy in making their views known when there are parallel or related cases. But they don't have to. It's not like a class action context where you can go before the judge and argue there's something wrong with the settlement. If I understand your theory correctly, you strike the deal with one, that's it. And that one may or may not actually serve the interest from the perspective of the other 11, but it doesn't matter as long as you can characterize the interest as being sufficiently similar. I mean, does that seem right? That doesn't seem right to me somehow. I'm not sure why it doesn't seem right in legal theory perhaps. But shouldn't the other 11 have an opportunity to speak for themselves? Well, if they can show that the right that they're trying to assert is truly unprotected and different, then certainly. But that's really the issue. What's your best case on that that extends the theory of virtual representation that far? Well, the cases we rely on primarily for that are the Cedar case, and even this court's decision in Alaska, the Alaska sport fishing case, which under those cases we have public agencies representing a public class and held to be representatives of all members of the class. In Alaska sport fishing, this court said that that representation is presumed to be adequate, and agencies within a government are considered to be in privity, and the Cedar case holds that. So those are the two primary cases we rely on for this. Let me alter the outcome of this. Let's assume that the criminal prosecution had gone forward with a judgment entered against your client. Would you then say that that judgment would collaterally stop you from defending against a trespass suit from the county or the city? Well, I would still say they have no trespass claim here. I know I'm fighting the question. You want to get to the merits? I realize that you think you have a strong case now, but I'm talking in theory as to the application of collateral estoppel. If it was litigated, decided? If you litigated the criminal case and lost, do you sign it? I think that would be an inevitable conclusion from that hypothetical. Your client would be barred from asserting a defense in a future environmental action. I see my time is about gone. The machine is telling me to sum up. The important one is the number, the number of minutes. Oh, okay. Well, I think that we are about ready to sum up here unless the Court has further questions. Go right ahead. When you consider what happened here, the Department of Fish and Game and the regulatory authorities brought proceedings, Equilon, in the papers it's Texaco, but it's Equilon more recently, spent $5 million cleaning up the marsh. The regulatory authorities determined that it had met all the requirements to clean up the marsh. They determined that claims for natural resources damages were adequately compensated, and they settled those claims. And now we're being asked to relitigate a lot of those same issues. And that's not good, and it's not right, and it will discourage parties in the future from doing what Equilon did as a responsible citizen in this case. Thank you. I just have one final quick question. In some jurisdictions where you have other people that may have potential claims, when you resolve the settlement of your case, you can ask the Court to bring in those parties or give them notice. I take it that didn't happen here. Such as a good faith settlement in a tort suit with multiple potential responsible defendants. I don't see any reason why it couldn't have been done. That did not happen here. No. Thank you for your argument. Let me also, one question. I saw, I think I saw someplace in the reading I did that I have been unable to put my hands on a reference to a statute that talks about how the settlement came about from a misdemeanor action. My first take was, gee, a misdemeanor action jumps to a civil settlement, that's odd, but I'm not familiar with California procedure. Is there, in fact, a statute or something in California law that explains how it is this came about? Yes. The statutes are Sections 1377 and 1378 of the California Penal Code. And the case that discusses this and explains how that works is called People v. Tishman. We cited it in our brief, but the citation is 35 Cal App 4174. Thank you. Thank you very much. Appreciate your argument. A rebuttal argument at this time? Thank you, Your Honor. I just want to turn to the last point that Judge Clifton raised. The statute is Section 1378 of the Penal Code, and it starts out by saying if the person injured appears before the court in which the action is pending at any time before trial and acknowledges that he has received satisfaction for the injury, the court may go on to talk about how the action may be dismissed. Well, that never happened here. The city never appeared, was never invited to appear before the criminal court in which the fishing game proceeding was pending, and it never acknowledged satisfaction for its injury, particularly the injury to its conservation easement in this case. So as brought out in the earlier discussion, the city had no part in the civil compromise that resulted from this criminal proceeding. The second point I want to make is that we cited last week in our letter a very recent California Court of Appeal decision called Leparc, L-E-P-A-R-C, Community Association versus Workers' Compensation Appeals Board, and I just want to read very briefly from that decision because it is very timely and it captures what I think is a fundamental point here. It says, quoting from an earlier decision that we also cited in the Branson case, different primary rights may be violated by the same wrongful conduct. Then it goes on to explain that was a case where a worker fell off a roof and he had pursued a negligence action which he had settled, and then he brought an action or proceeding before the Workers' Compensation Board to recover against the employer who was uninsured. Res judicata was pleaded, and the court held that it did not apply, partly for the reason we've already discussed, that because in the first proceeding there was no jurisdiction to deal with the claims that the plaintiff, the man who fell off the roof, asserted in the second proceeding. But also the court said, although from a medical viewpoint, Curran suffered only a single set of injuries as a result of his fall from the roof, his claims against LaParke in the workers' compensation proceeding and in the superior court action asserted two distinct primary rights, the statutory right to prompt certain compensation for all work-related injuries, regardless of fault, and the common law right to be free of his employer's negligence in maintaining his work environment. And that is exactly the position we assert here, that the city was entitled to vindication of its rights as a member of the public, if you will, to the protection of public resources. Arguably that was done by the fish and game in the proceeding that it brought against Texaco, and it was separately entitled to the vindication of its rights as the holder of this conservation easement. That did not take place in the criminal proceeding, and that is the purpose of this case. Let me raise with you maybe the mirror image of what concerned me during your colleague's argument, which is you've got your dozen organizations all claiming to represent the public and assert the public rights. Now I pose to him, what if, can you just settle with one and leave the other 11 hanging? I suppose it's the other way around. You've got 11 groups there willing to say, yes, this is the right resolution for this problem. This cleans up, in this case, the marsh. You've got one guy out there that says, no, I'm not going to go along and I'm a member of the public, and so I'm not going to agree to this. I'm going to continue to sue and pursue my remedy elsewhere. What would you say about that situation? Well, what I would say, Your Honor, is if this 12th guy only holds rights as, quote, a member of the public, he is foreclosed. And, you know, that's what the Alaska sport fishing decision says. And I won't extend the time here by reading from it, but I would invite your attention to that because the court did make very clear that the reason the sport fishermen were precluded there was because they brought only claims that they held in common with other members of the public to protection of the environment, protection of the marine resources. This is what concerned me before, which is I still haven't figured out how the city's claims are any different from the claims of the public more generically. Well, they are different, Your Honor, because under California law, they stem from a different source of primary right. They stem from this conservation easement as opposed, if you will, to the rights that the city and every other member of the public holds to protection of the environment. And notwithstanding, as I just read here, that the, quote, same wrongful conduct by Texaco is involved, under California law, and I did say it in our brief, the result might be different under federal law, which follows this transactional analysis or core of operative facts analysis, but there are two or three California decisions that have specifically held that our law is different. It derives from the code pleading system, homorized jurisprudence, all those things that are well before my time, but they are the law of California and they continue to be reinforced as such most recently in this very decision, this LaParte Community Association case that I cited in our letter last week. Okay. Thank you very much, counsel, for your argument. Thanks. Both sides are quite helpful. The case, just argued, will be submitted for decision, and the Court is going to stand in recess for about ten minutes.
judges: Hawkins, Thomas, Clifton